IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE LYNN VENAZIANO, | ) | CASE NO.  3:25-CV-01165-JJH |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JEFFREY J. HELMICK |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Michelle Venaziano ("Plaintiff" or "Venaziano"), challenges the final decision of Defendant, Frank Bisignano,[1] Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

In February 2023, Venaziano filed an application for POD, DIB, and SSI, alleging a disability onset date of January 1, 2010,[2] and claiming she was disabled due to bipolar disorder, severe depression,

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.
[2] At the hearing, Venaziano amended her alleged onset date to June 1, 2021.  (Transcript ("Tr.") 26.)

1

personality disorder, and anxiety.  (Transcript ("Tr.") 26, 72.)  The applications were denied initially and upon reconsideration, and Venaziano requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 26.)

On May 2, 2024, an ALJ held a hearing, during which Venaziano, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On May 28, 2024, the ALJ issued a written decision finding Venaziano was not disabled.  (*Id.* at 26-38.)  The ALJ's decision became final on April 30, 2025, when the Appeals Council declined further review.  (*Id.* at 1-7.)

On June 4, 2025, Venaziano filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 9-10, 12.) Venaziano asserts the following assignment of error:

(1)     The ALJ failed to account for the "total limiting effects" of Plaintiff's impairments pursuant to 20 C.F.R. §§ 404.1520c, 404.1545(e), 416.920c, and 416.945(e), resulting in a decision that is not supported by substantial evidence.

(Doc. No. 9.)

## II.     EVIDENCE

### A.     Personal and Vocational Evidence

Venaziano was born in September 1971 and was 52 years-old at the time of her administrative hearing (Tr. 26, 37), making her a "person closely approaching advanced age" under Social Security regulations.  *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).  She has at least a high school education.  (Tr. 37.) She has past relevant work as a billing clerk and an appointment clerk.  (*Id.*)

**B.**     **Relevant Medical Evidence[3]**

On January 27, 2021, Venaziano saw Ashley Rogier, APRN-CNP, for medication follow up and reported "noticeable improvement" in her mood since increasing her dose of Zoloft to 10 mg daily. (*Id.* at 494-95.)  Venaziano told Rogier she was "feeling significantly better" and was less stressed. (*Id.* at 495.) She had "limited anxiety" and no longer felt depressed. (*Id.*)  She felt happier and had more energy. (*Id.*) She continued to struggle with sleep, but it was starting to improve. (*Id.*)  She occasionally took Xanax as needed for breakthrough anxiety. (*Id.*)  On examination, Rogier found normal mood, normal behavior, and normal judgment. (*Id.* at 498.)

On November 3, 2021, Venaziano saw Rogier for complaints of right shoulder pain and requested a psychiatry referral. (*Id.* at 1200.)  Venaziano thought she might be bipolar. (*Id.*)  She reported a history of anxiety and depression, and felt the medications she had been prescribed had not worked for her. (*Id.*) Venaziano told Rogier she had been under a lot of stress recently and endorsed mood swings and poor sleep. (*Id.* at 1200-01.)  On examination, Rogier found normal mood, behavior, and judgment. (*Id.* at 1205.) Rogier diagnosed Venaziano with generalized anxiety disorder and provided Venaziano with a psychiatry referral as requested. (*Id.*)

On November 22, 2021, Venaziano saw Cherly Thompson, LPCC, for an initial Adult Behavioral Health Assessment. (Tr. 1372, 1381.)  Venaziano reported that her primary care provider prescribed an antidepressant, sleep medication, and Xanax. (*Id.* at 1372.)  She had stopped taking the antidepressant because she did not think it was helping. (*Id.*)  Venaziano told Thompson she had experienced anxiety and depression since childhood, and she had a lot of stress recently. (*Id.*)  Venaziano knew she needed to return to work, but the thought of it overwhelmed her and she felt "quite unmotivated." (*Id.*)  She endorsed

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  As Venaziano challenges only the ALJ's mental findings, the Court further limits its discussion of the evidence to Venaziano's mental impairments.

depression symptoms consisting of depressed mood, difficulty concentrating, lack of motivation, desire to isolate, irritability and difficulty with anger, feelings of hopelessness, crying, fatigue, overeating (had gained about 25 pounds in the past year), and difficulty falling and staying asleep.  (*Id.* at 1380.)  She endorsed anxiety symptoms consisting of excessive worrying, difficulty relaxing, feeling on edge, and overthinking things.  (*Id.*)  Her anxiety interfered with her focus, sleep, and ability to complete tasks.  (*Id.*)  On examination, Thompson found Venaziano alert, oriented, and cooperative with good grooming/hygiene, good eye contact, normal speech, dysphoric mood, broad affect, logical and tangential thought processes, intact memory, and good judgment and insight.  (*Id.* at 1372-73.)  Thompson diagnosed Venaziano with major depressive disorder, recurrent episode, moderate, generalized anxiety disorder, unspecified trauma- and stressor-related disorder, and uncomplicated bereavement.  (*Id.* at 1380-81.)

On December 2, 2021, Venaziano saw Irfan Ahmed, M.D., for an initial psychiatric evaluation.  (*Id.* at 1385-86, 1393.)  Venaziano reported worsening depression and anxiety and endorsed "severe anhedonia, irritability, low energy, [and] mood swings."  (*Id.* at 1386.)  She told Dr. Ahmed she had taken Prozac, Lexapro, and Zoloft without much relief.  (*Id.*)  On examination, Dr. Ahmed found normal appearance, normal speech, sad mood, dysphoric affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1386-87.)  Dr. Ahmed prescribed Buspirone and Rexulti.  (*Id.* at 1390.)

On January 3, 2022, Venaziano saw Dr. Ahmed for follow up.  (*Id.* at 1394.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad, anxious, and irritable mood, dysphoric and anxious affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1395-96.)  Dr. Ahmed increased Rexulti and continued Buspirone.  (*Id.* at 1399.)

On April 4, 2022, Venaziano saw Dr. Ahmed for follow up and reported worsening mood swings.  (*Id.* at 1403.)  She also endorsed weight gain on Rexulti.  (*Id.*)  On examination, Dr. Ahmed found normal

appearance, normal speech, sad, anxious, and irritable mood, dysphoric, anxious, and blunted/flat affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1404-05.)  Dr. Ahmed noted they would do gene testing and then start a new mood stabilizer.  (*Id.* at 1407.)  Dr. Ahmed continued Rexulti and prescribed Vistaril.  (*Id.* at 1408.)

On June 27, 2022, Venaziano saw Dr. Ahmed for follow up and reported worsening depression.  (*Id.* at 1412.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad, anxious, and irritable mood, dysphoric, anxious, and blunted/flat affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1414-15.)  Dr. Ahmed noted they would switch from Pristiq to Wellbutrin.  (*Id.* at 1417.)

On September 19, 2022, Venaziano saw Dr. Ahmed for follow up and reported worsening depression.  (*Id.* at 1422.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad, anxious, and irritable mood, congruent affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1424-25.)  Dr. Ahmed noted they would start a trial of Trintellix after titration, as well as Klonopin.  (*Id.* at 1427.)

On January 26, 2023, Venaziano saw Dr. Ahmed for follow up and reported worsening depression.  (*Id.* at 1437.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad, anxious, and irritable mood, congruent affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1439.)  Dr. Ahmed started Venaziano on Abilify.  (*Id.* at 1442.)

On March 27, 2023, Venaziano saw Dr. Ahmed for follow up and reported her medications weren't helping and Abilify made her tired and sleepy.  (*Id.* at 1448.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad mood, congruent affect, normal attention span and concentration, normal

5

thought content and process, normal cognition, and intact associations.  (*Id.* at 1450.)  Dr. Ahmed switched Venaziano from Abilify to Wellbutrin and increased Trintellix.  (*Id.* at 1453.)

On April 24, 2023, Venaziano saw Dr. Ahmed for follow up and reported tiredness, fatigue, low energy, and lack of motivation.  (*Id.* at 1457.)  On examination, Dr. Ahmed found normal appearance, normal speech, sad mood, congruent affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1459.)  Dr. Ahmed switched Venaziano from Trintellix to Viibryd.  (*Id.* at 1462.)

On November 8, 2023, Venaziano saw Rogier for follow up and reported her mood was stable on her current medications and denied breakthrough anxiety.  (*Id.* at 1503.)  On examination, Rogier found normal mood, normal behavior, and normal judgment.  (*Id.* at 1508.)

On January 29, 2024, Venaziano saw Dr. Ahmed for follow up for the first time in nine months.  (*Id.* at 1472.)  She reported she had been off her medication for eight months.  (*Id.*)  Venaziano endorsed worsening depression and anxiety, as well as low energy and lack of motivation.  (*Id.*)  On examination, Dr. Ahmed found normal appearance, normal speech, sad and anxious mood, congruent affect, normal attention span and concentration, normal thought content and process, normal cognition, and intact associations.  (*Id.* at 1474-75.)  Dr. Ahmed started Venaziano on Latuda.  (*Id.* at 1478.)

On February 6, 2024, Dr. Ahmad completed a functional capacity assessment.  (*Id.* at 1366-71.)  Dr. Ahmad opined that despite regular treatment, including weekly therapy and medication management, Venaziano's condition had deteriorated, and her symptoms had increased.  (*Id.* at 1366.)  Dr. Ahmed explained that Venaziano's anxiety, depression, and mood swings resulted in "long periods of time" where she could not perform her own activities of daily living.  (*Id.*)  Dr. Ahmed identified the following symptoms as ones Venaziano experienced: anhedonia or pervasive loss of interest in almost all activities; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; emotional lability; mood

6

disturbance; difficulty thinking or concentrating; persistent disturbances of mood or affect; change in personality; emotional withdrawal or isolation; easy distractibility; and sleep disturbance. (*Id.* at 1366-67.)

Dr. Ahmed opined that Venaziano had no useful ability to function in the following areas: (1) remember work-like procedures; (2) maintain attention for two-hour segments; (3) maintain regular attendance and be punctual within customary, usually strict tolerances; (4) sustain an ordinary routine without special supervision; (5) work in coordination with or proximity to others without being unduly distracted; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms; (8) perform at a consistent pace without an unreasonable number and length of rest periods; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (11) respond appropriately to changes in a routine work setting; (12) deal with normal work stress; (13) carry out detailed instructions; (14) set realistic goals or make plans independently of others; (15) deal with the stress of skilled or semiskilled work; (16) interact appropriately with the general public; and (17) adhere to basic standards of neatness and cleanliness. (*Id.* at 1367-68.)

Dr. Ahmed further opined that Venaziano was unable to meet competitive standards in the following areas: (1) understand and remember very short and simple instructions; (2) carry out very short and simple instructions; (3) be aware of normal hazards and take appropriate precautions; (4) understand and remember detailed instructions; and (5) maintain socially appropriate behavior. (*Id.* at 1367-68.)

Dr. Ahmed explained that, due to Venaziano's diagnoses, she "would have difficulties in completing work duties in a complete and safe manner" and that her anxiety and depression caused impaired concentration, insight, and judgment. (*Id.* at 1368.) Dr. Ahmed noted Venaziano's conditions were chronic, and she would experience "flare-up episodes." (*Id.*) Dr. Ahmed opined Venaziano had a "decline and deterioration in function." (*Id.*)

Dr. Ahmed further opined Venaziano had extreme limitations in her abilities to maintain social functioning and maintain concentration, persistence, or pace. (*Id.* at 1369.) Dr. Ahmed further opined Venaziano had a marked limitation in her ability to perform ADLs. (*Id.*) He further opined that Venaziano would have three episodes of decompensation within a 12-month period, each lasting at least two weeks. (*Id.*) Dr. Ahmed further opined that Venaziano would be absent from work more than four days per month due to her impairments or treatment. (*Id.* at 1370.)

**C.      State Agency Reports**

On July 3, 2023, Kristen Haskins, Psy.D., reviewed the file and found no limitation in Venaziano's ability to understand, remember, or apply information and moderate limitations in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (*Id.* at 75, 84.) Dr. Haskins opined that Venaziano could "carry out a variety of tasks in a work environment that does not require a fast pace and where [she] can work away from the distractions of others." (*Id.* at 77, 86.) Venaziano could interact with others on a superficial and occasional basis. (*Id.*) She could adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis. (*Id.*) Major changes needed to be introduced in advance and then gradually phased in to allow Venaziano time to adjust to the new expectations. (*Id.*)

On October 16, 2023, on reconsideration, psychologist Sheri Tomak affirmed Dr. Haskins' findings. (*Id.* at 96-99, 105-108.)

**D.      Hearing Testimony**

During the May 2, 2024 hearing, Venaziano testified to the following:

- When she quit her job, her mother had been diagnosed with dementia and had moved into her house. (*Id.* at 58.) She quit her job so she could care for her mother. (*Id.*)

- She experiences anxiety and panic all the time. (*Id.* at 59.) She rarely leaves the house, and she doesn't talk to anyone. (*Id.*) She does not associate with any family or friends. (*Id.*) She doesn't go anywhere. (*Id.*) Her only source of enjoyment is her dog. (*Id.*)

8

- Her boyfriend lives with her and helps with a lot of things. (*Id.* at 60.) There are days she gets up and does things, and they will go to the store, but only because she must do so. (*Id.*) She'd rather just be home and left alone. (*Id.*)

- She no longer has any hobbies. (*Id.*) She used to ride her motorcycle, but she hasn't done that in two years. (*Id.*) She used to walk her dog, but she doesn't enjoy that anymore. (*Id.*) She cleans the house and does laundry to pass the time. (*Id.*)

- Her memory and concentration are poor. (*Id.* at 61.) She gets distracted easily. (*Id.*) Her doctor recommended she get tested for early onset dementia. (*Id.* at 61-62.)

- Her main problem is her anxiety and depression. (*Id.* at 62.) Her psychiatrist told her she has borderline schizophrenia and bipolar disorder. (*Id.*) She has tried all sorts of medications, and none of them seem to work. (*Id.*) Her psychiatrist is going to change her medication again. (*Id.*) Her anxiety and depression wax and wane. (*Id.*) She experiences mood swings often. (*Id.*) She doesn't handle stress well. (*Id.*) She spends all day in bed two to three days a week. (*Id.* at 62-63.) If she's not in bed, she will lay on the couch. (*Id.* at 63.) She goes two to three days without showering. (*Id.*)

- She drives once or twice a week. (*Id.*) She goes less than half a mile down the road to pick up her prescriptions. (*Id.*)

The VE testified Venaziano had past work as a billing clerk and appointment clerk. (*Id.* at 66.) The ALJ then posed the following hypothetical question:

> Can you please assume a hypothetical individual of the same age, education, background and work experience of the claimant, with the residual functional capacity to perform light work except that this hypothetical individual should be able to tolerate occasional overhead reaching with the bilateral upper extremities.
>
> This hypothetical individual should avoid pace rate work. This hypothetical individual should, excuse me, should avoid ladders, ropes and scaffolds and avoid hazards, including moving machinery, heavy machinery and unprotected heights. This hypothetical individual should be able to tolerate occasional interaction with coworkers, supervisors and the public.
>
> Any interaction outside the scope of employment should be limited to less than occasional. This hypothetical individual should be able to tolerate occasional changes, occasional decision-making or any changes that were explained. This hypothetical individual should also avoid tandem work.
>
> Can this hypothetical individual perform any past work or any other work in the national economy?

(*Id.*)

9

The VE testified the hypothetical individual would not be able to perform Venaziano's past work as a billing clerk and appointment clerk.  (*Id.*)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as inspector and hand packager, sorter, and marker.  (*Id.* at 67.)

### III.  STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4)*,* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work

10

activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Venaziano was insured on the amended alleged disability onset date, June 1, 2021, and remained insured through September 30, 2025, the date last insured ("DLI").  (Tr. 26-27.)  Therefore, in order to be entitled to POD and DIB, Venaziano must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2025.

2.    The claimant has not engaged in substantial gainful activity since June 1, 2021, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine; degenerative joint disease (DJD) left shoulder, Major depressive disorder (MDD); anxiety and depression (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

11

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional overhead reaching with the bilateral upper extremities; avoid ladders, ropes or scaffolds; avoid activity at a production rate pace, occasional interaction with coworkers, supervisors, and the public; interaction outside the scope of employment less than occasional; avoid tandem work; can occasionally handle changes and occasionally handle decision making where changes are well explained.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on September **, 1971, and was 49 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 28-38.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*,

12

594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

13

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In her sole assignment of error, Venaziano argues that the ALJ erred in analyzing the opinions of Dr. Ahmed and the state agency consultants. (Doc. No. 9 at 11.)  Venaziano asserts that the ALJ's "deficient analysis" of Dr. Ahmed's opinion lacks the support of substantial evidence. (*Id.*)  Venaziano further asserts that the ALJ's analysis of the state agency reviewing consultants' opinions was deficient "because, despite finding their opinions partially persuasive, the ALJ did not provide a sufficient explanation as to why he omitted a limitation for superficial interaction from the RFC." (*Id.*)  The Court addresses each of these arguments in turn.

### A.      State Agency Consultants

Venaziano asserts that the ALJ rejected the state agency psychologists' limitation to "superficial" interaction with others "because, in the ALJ's view, 'the term superficial is not a vocationally relevant term and has not been defined.'" (*Id.* at 12.)  Venaziano maintains that the ALJ also determined that the "remaining RFC limitations, including one for occasional social interaction, sufficiently accounted for this limitation." (*Id.*)  Venaziano argues that both reasons are incorrect. (*Id.*)  First, the terms "occasional" and "superficial" are not interchangeable. (*Id.*) (citations omitted).  The term "occasional" relates to the <u>quantity</u>

of time spent with individuals, while the term "superficial" relates to the <u>quality</u> of the interaction.  (*Id.* at 12-13.)  Venaziano maintains that "the ALJ's rationale that the term 'superficial' is not vocationally relevant is clearly contrary to the case law cited," and "it is well established that the term 'superficial' is a vocationally relevant term (i.e., quality of the interaction) and that it is not the same as the term 'occasional' (i.e., quantity of the interaction)."  (*Id.* at 13.)  In addition, Venaziano argues that the other RFC limitations do not fully address the limitation to superficial interaction "because those limitations address pacing (avoiding activity at a production rate pace), quantity of social interaction (occasional interaction with coworkers, supervisors, and the public; with interaction outside the scope of employment being less than occasional), and adaptation limitations (occasionally handle changes and occasionally handle decision making where changes are well explained)."  (*Id.*)  Venaziano argues that the "only RFC limitation that remotely addresses the quality of social interaction is 'avoiding tandem work'"; however, tandem work addresses "only the quality of social interaction with coworkers and does not address the quality of interaction with supervisors or the public."  (*Id.*)

The Commissioner responds that the ALJ accounted for the limitation to superficial interaction by finding Venaziano could not do tandem work, which "this Court has explicitly held accounts for a limitation to superficial interaction with others."  (Doc. No. 10 at 5) (collecting cases).  The Commissioner argues that "[t]hese cases all show that Plaintiff's argument that a limitation to no tandem work 'does not address the quality of interaction with supervisors or the public,' fails to recognize that this argument has been directly and routinely rejected by this Court."  (*Id.*)

In her reply, Venaziano appears to concede that this Court's opinion in *Kearns v. Commissioner of Social Security*, No. 3:19-cv-01243, 2020 WL 2841707 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted by* 2020 WL 2839654 (N.D. Ohio June 1, 2020), rejects her argument.  (Doc. No. 12 at 3.)  However, Venaziano appears to imply *Kearns* was wrongly decided, as she "disagrees with the

15

Commissioner's reliance" on that case and instead argues that "the ALJ's error resulted in an analytical gap in the decision that this Court cannot supply on its own." (*Id.* at 2-3) (citations omitted).

The ALJ's RFC limited Venaziano to "occasional interaction with coworkers, supervisors, and the public" and "interaction outside the scope of employment less than occasional." (Tr. 32.) The ALJ's RFC also provided that Venaziano must "avoid tandem work." (*Id.*)

In weighing and analyzing the state agency reviewing psychologists' opinions, the ALJ found as follows:

> The state agency psychological consultants opined that the claimant could carry out a variety of tasks in a work environment that does not require a fast pace where she can work away from the distraction of others and interact with others on a superficial and occasional basis and adjust to minor changes with major changes being introduced and advancing gradually phased in to allow the claimant time to adjust to new expectations (3A, 4A, 7A, 8A). The undersigned finds this is somewhat persuasive. It is supported by the record in that the claimant was anxious almost all the time with racing thoughts and flashbacks with irritability and anger and a depressed mood with difficulty concentrating and a desire to isolate but had intact memory (7F/9-20). It is consistent with the medical evidence record at the hearing level that she was assessed with generalized anxiety disorder and major depressive disorder treated with counseling for racing thoughts and irritability and anger and difficulty concentrating with racing thoughts and resulting increases in her medication (7F/9; 1F/17; 4F/39). The undersigned notes that the term superficial is not a vocationally relevant term and has not been defined. The undersigned has accounted for this, by the inclusion of the limitations of avoiding activity at a production rate pace, occasional interaction with coworkers, supervisors, and the public; with interaction outside the scope of employment being less than occasional; avoiding tandem work; can occasionally handle changes and occasionally handle decision making where changes are well explained.

(*Id.* at 36.)

First, as Venaziano concedes, the ALJ only found the state agency psychologists' opinions to be partially persuasive. Therefore, as the ALJ explained, the ALJ failed to find the entirety of the state agency psychologists' opinions to be persuasive.

Turning to Venaziano's argument that the RFC fails to address superficial interaction with supervisors, as the Commissioner points out, and Venaziano appears to concede, in *Kearns* this Court found

16

as follows: "the ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of Drs. Matyi and Finnerty that Kearns be limited to superficial interaction with others." 2020 WL 2841707 at *12 (citing *Collins v. Comm'r of Soc. Sec.*, No. 3:17 CV 2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018)).

More recently, this Court addressed an analogous situation in *Romo v. Commissioner of Social Security*, Case No. 3:20-CV-01557-JGC, 2021 WL 5040385 (N.D. Ohio July 9, 2021), *report and recommendation adopted by* 2021 WL 4437062 (N.D. Ohio Sept. 28, 2021). In *Romo*, the ALJ limited the claimant to occasional interaction with supervisors and coworkers, no contact with the general public, and no tandem work. *Id.* at *7. Like Venaziano, Romo challenged the ALJ's RCF findings on the basis that ALJ failed to properly account for the limitation to superficial interaction opined by the state agency psychologists. *Id.* The Court rejected Romo's argument as follows:

> The State Agency psychologists determined Claimant was limited to superficial social limitations, while the ALJ restricted Claimant to "occasional interaction with supervisors, coworkers, and [ ] no contact with the general public." (ECF No. 12, PageID #: 94). Additionally, the ALJ limited Claimant to "no tandem work." (ECF No. 12, PageID #: 94). The ALJ's restrictions did not permit greater frequency of interpersonal contact than the State agency psychologists. For the general public, the ALJ provided a more restrictive RFC than the restrictions indicated by the State Agency psychologists when he limited Claimant to "no contact". Further, the ALJ limited Claimant to "occasional" interaction with "no tandem work" with his supervisors and coworkers. Tandem tasks "logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact." *Collins v. Comm'r of Soc. Sec.*, No. 3:17 CV 2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018), report and recommendation adopted, No. 3:17-CV-2059, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019). **Here, since the ALJ limited Claimant to "no tandem work", such a limitation prevents him from working alongside coworkers and supervisors. It logically follows then that the only interaction that Claimant would have with his coworkers and supervisors would be superficial.**
>
> The ALJ has no obligation to adopt the limitations of a non-examining source verbatim, even when assigning an opinion great weight. *Reeves*, 618 F. App'x at 275. Here, the ALJ accommodated the State Agency reviewing psychologists' opinions' limitation to superficial interaction when the ALJ

limited Claimant to "no tandem work" and there is not an inconsistency in the ALJ's opinion. Accordingly, there is no error here.

*Id.* (emphasis added).

Although not addressed by either party, the Court notes that in this case, unlike *Kearns* and *Romo*, the ALJ did not include a qualitative restriction on Venaziano's interaction with the public. However, as set forth above, the ALJ only found the state agency psychologists' opinions partially persuasive. In addition, throughout the decision, the ALJ noted other findings in the record in support of the RFC finding, including cooperative and pleasant behavior and improvement with medication. *See Buck v. Comm'r of Soc. Sec.*, 2023 WL 3978288, **1, 3 (N.D. Ohio June 13, 2023). Furthermore, although not mentioned by the ALJ, the record shows a period of nine months where Venaziano did not receive psychiatric treatment and that she had been off her medication for eight months. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

"While the Court agrees that Commissioner 'cannot come and rewrite the ALJ's reasoning' or 'offer a post hoc explanation for the ALJ's vague determination that the state agency consultants' opinions were only somewhat persuasive' (Doc. 11, at 11), this Court finds that, when reading the decision as a whole as required, the ALJ adequately articulated her reasoning by citing ample evidence and imposing corresponding limitations. 'While it may have been preferable for the ALJ to have explicitly referenced these record inconsistencies ..., that is not required so long as her reasoning is apparent to the reader.' *Acoff v. Comm'r of Soc. Sec.*, 2019 WL 2359878, at *9 (N.D. Ohio), *report and recommendation adopted by* 2019 WL 2358968 (N.D. Ohio)." *Buck*, 2023 WL 3978288, at *3.

### B.    Dr. Ahmed

Venaziano asserts that the ALJ's "deficient analysis" of Dr. Ahmed's opinion lacks the support of substantial evidence for several reasons. (Doc. No. 9 at 11, 14.) First, Venaziano argues that "it is unclear" from the ALJ's decision "which limitations the ALJ credited or rejected from this largely work-preclusive

18

opinion." (*Id.* at 14.)  Second, Venaziano maintains that Dr. Ahmed's opinions "are entirely consistent with the record, which demonstrates that Plaintiff continued to report worsening symptoms despite multiple trials of different psychotropics and dosage increases." (*Id.* at 15) (citations omitted).  Third, Venaziano asserts that "the ALJ's reliance on a lack of back pain to reject some undefined portion of Dr. Ahmed's opinion is irrelevant and nonsensical because Dr. Ahmed based his limitations on Plaintiff's mental impairments, not on back pain." (*Id.* at 17.)  Venaziano argues that the "ALJ painted a wholly inaccurate portrayal of the record contrary to SSA's mandate that ALJs must consider all relevant evidence when evaluating a disability claim." (*Id.* at 16) (citations omitted).

The Commissioner responds that substantial evidence supports the ALJ's finding that Dr. Ahmed's "extreme opinion . . . was only partially persuasive." (Doc. No. 10 at 6.)  The Commissioner argues that the ALJ "discussed mental status examinations throughout the record that were generally unremarkable and inconsistent with Dr. Ahmed's opinion." (*Id.* at 7.)  In addition, the ALJ discussed Venaziano's daily activities, which were also inconsistent with Dr. Ahmed's opinion. (*Id.*)  The Commissioner asserts that Venaziano's claim "that she cannot tell which aspects of the [sic] Dr. Ahmed's opinion" were credited or rejected by the ALJ "is easily remedied by reviewing the RFC." (*Id.* at 8.)  Because the ALJ explained that Dr. Ahmed's opinion was inconsistent with other evidence in the record and Venaziano's activities of daily living, the ALJ's decision should be affirmed. (*Id.*)

Since Venaziano's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings,

19

including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability;[4] (2) consistency;[5] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

---

[4] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[5] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. § 416.920c(a), (b)(1)).  A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

In the RFC analysis, the ALJ weighed and analyzed Dr. Ahmed's opinion as follows:

In February 2024, the claimant had a mental residual functional capacity questionnaire and Irfan Ahmed, M.D., opined that the claimant had no useful ability to function in remembering work like procedures; maintaining attention for two hour segments; maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; working coordination with or proximity to others without being unduly distracted; making simple workrelated decisions; completing a normal workday and work week without interruptions from psychologically-based symptoms; performing at a consistent pace without unreasonable length of rest; Accepting instructions and responding appropriately to criticism from supervisors; getting along

21

coworkers or peers without unduly distracting them; responding appropriately to changes in routine work setting; dealing with normal work stress; and that she would be unable to meet competitive standards in understanding and remembering very short and simple instructions; carrying out very short simple instructions; and being aware of normal hazards to take appropriate precautions; and she was seriously limited in her ability to ask questions or request assistance (6F). It was opined that she had no useful ability to function in interacting appropriately with the general public; adhering to the basic standards of neatness and cleanliness; traveling in unfamiliar places; using public transportation; and was unable to meet competitive standards and maintaining socially appropriate behavior (6F). It was opined that the claimant had extreme limitations in maintaining social functioning and maintaining concentration, persistence, or pace and a marked limitation and restriction of activities of daily living with three episodes of decompensation with the 12-month period each of at least two weeks duration (Id.). It was opined that the claimant will be absent more than four days per month (6F). The undersigned finds this is partially persuasive. This is supported by the notation that the claimant was anxious and depressed and had impaired concentration, insight, and judgment (6F). This is consistent with the treatment notes that she was assessed with generalized anxiety disorder and major depressive disorder treated with counseling for racing thoughts and irritability and anger and difficulty concentrating with racing thoughts (7F/9; 1F/17; 4F/39). However, it is inconsistent with the claimant reporting she was doing better on her medication and was being more active with walking her dogs and exercising and cleaning her house and she was tolerating her medication well with no side effects with a stable mood and no breakthrough anxiety and was negative for back pain (8F/14-35, Hearing).

(Tr. 35.)

The ALJ considered the supportability and consistency of Dr. Ahmed's opinion as required by the regulations, discussing evidence that was unsupportive of disability in the process. (*Id.*) While true that Venaziano's back pain is irrelevant to the mental limitations opined by Dr. Ahmed, that is only one reason at the end of the ALJ's analysis for discounting Dr. Ahmed's opinion. (*Id.*) A perfect opinion is not required. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.") (citations omitted); *see also NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n.6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (when "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.").

22

Regarding the ALJ's consideration of Venaziano's daily activities as one reason for discounting Dr. Ahmed's opinion, "while merely citing to a claimant's daily activities cannot conclusively establish an ability to engage in full-time work, it is also true that a claimant's capacity to perform tasks in daily living is a legitimate factor to be considered in assessing the claimant's functional capacity." *Dodson v. Comm'r of Soc. Sec.*, Case No.5:18-CV-02263, 2019 WL 6841771, at *3 (N.D. Ohio Dec. 16, 2019).

It is the ALJ's job to weigh the evidence and resolve conflicts, and the ALJ did so here. While Venaziano would weigh the evidence differently, it is not for the Court to do so on appeal. Again, the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton*, 246 F.3d at 772-73.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


Date: April 22, 2026                                *s/ Jonathan Greenberg*
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**